In the Matter of John A. McGUIRE, Paula McGuire and Norris R. McGuire, individually and d/b/a/ Webb Oil Company, Bankrupts.

Charles E. BECK and M. J. Hitchcock, Receivers, Plaintiffs,

v.

Frank J. REPASKY, Defendant.

Bankruptcy Nos. 78–202 Erie to 78–205 Erie.

United States Bankruptcy Court, W. D. Pennsylvania.

March 31, 1982.

Milton W. Rosen and John R. Gavin, Oil City, Pa., and Richard L. Halpern, Fort Lauderdale, Fla., for plaintiffs.

John S. Kookogey, and Jack, Kookogey & Felton, Titusville, Pa., for defendant.

MEMORANDUM AND ORDER ON ACTION OF RECEIVERS AND TRUSTEES AGAINST FRANK J. REPASKY

WILLIAM B. WASHABAUGH, Jr., Bankruptcy Judge:

John A. McGuire, his wife, Paula, and his son, Norris, individually and d/b/a Webb Oil Company, a partnership, were adjudicated bankrupts August 28, 1978 on an involuntary petition filed against them August 10, 1978 after State Court Receivers were appointed for them in an action in the Court of Common Pleas of Venango County, Pennsylvania, July 11, 1978. The adjudication in involuntary bankruptcy was affirmed on appeals to the United States District Court for the Western District of Pennsylvania (Knox, J.) and the United States Third Circuit Court of Appeals (Per Curiam).

The attorneys for the trustees filed a Complaint against Frank J. Repasky in the within adversary proceeding, September 12, 1978 alleging that he was "in possession of substantial money and/or assets and/or books or records belonging to Webb Oil Company and/or John A. McGuire" and the other partners and that the plaintiffs believed that the defendant was indebted to the bankrupt. The plaintiffs asked the Court to "issue an Order of Summons upon the defendant, Frank Repasky, returnable on the 27th day of September, 1978" without indicating the form of relief desired, whether by way of accounting, discovery, or otherwise. No Motion to Dismiss on the ground of the possibly insufficient Complaint was filed and it was amended May 11, 1979 to aver that testimony had been taken in the action and that the plaintiffs desired to produce additional evidence; that "plaintiffs seek judgment against the defendant, Frank Repasky, in such sum or sums of money as this Court shall determine to be due and owing to the plaintiffs on behalf of the bankrupt estate".

The testimony at the hearings discloses that John A. McGuire paid Repasky various sums of money totaling $93,700 between April 24, 1978 and June 26, 1978 within four months of the filing of the bankruptcy petition August 10, 1978, $85,000 for the formation of a corporation known as the Penn Well Logging Company in which Repasky received a ⅓ interest valued at $28,333 in February 1978, and that as part of the $93,700 payments within four months of the involuntary petition, the sum of $7,500 constituting the downpayment on a drilling rig purchased by Repasky for his use in the McGuire-Webb Oil operations and his other enterprises for a total consideration of $334,500 of which the balance above McGuire's contribution was financed by secured obligations of Repasky.

■ There are no allegations in the Complaint, the Amended Complaint, or the testimony that the McGuires or the Webb Oil Company were insolvent at the time of the alleged payments or, if insolvency existed, that Repasky had knowledge thereof, nor are there any allegations or testimony in respect to the other elements required to establish a preferential payment or fraudulent transfer under the Bankruptcy Act of 1898 which governs this proceeding: *3 (part 2) Collier on Bankruptcy (14th Ed.) ¶ 60.02 et seq.* That none of these elements are presumed but must be alleged and proved and that the trustee has the burden of proving them in cases under the former *Act., see 3 (part 2) Collier on Bankruptcy (14th Ed.) ¶ 60.62 where* it was said:

> "The law places upon the trustee (or receiver) the unmistakable burden of proving by a fair preponderance of all the evidence every essential, controverted element resulting in the composite voidable preference. A presumption arises that payments made by the bankrupt to creditors are valid, and the trustee seeking to recover such payments must overcome this presumption by adequate proof of a voidable preference."

■ No requests for findings of fact or conclusions of law were submitted by either of the parties and the only allegations of a theory under which the plaintiff's request for judgment could be considered is a bald statement in their brief that the payments complained of were made within four months of the bankruptcy filing. We are unable to find from the testimony that plaintiffs met the required burden of proof that Repasky was overpaid for his labor and materials or that a preferential or fraudulent transfer was involved.

Repasky filed a lengthy affidavit itemizing the substantial services he rendered and the expenditures he advanced for McGuire in drilling, pumping, and maintaining over 30 oil wells, in clearing and constructing access and other roads to and across the tracts of land on which the wells were located, and in furnishing the labor and materials for these operations. The affidavit itemizing these operations was several pages in length and he was cross-examined by counsel for the trustees and examined by his own attorney in respect to almost all of the many items involved. No credible testimony was offered on behalf of the trustees to show he was overpaid for his services and advancements. McGuire stated in depositions taken while he was on his death bed in the Tompkins Memorial Hospital, Ithaca, New York, June 14, 1979 on the basis of detailed computations therein and in an earlier affidavit dated May 7, 1979 that Repasky was indebted to him in the sum of $53,542.08 subject to credits of $40,256.20 and $24,912.44 which, if true as appears, would leave the bankrupt estate indebted to Repasky in an amount of $11,626.56.

It was not disputed that Repasky earned and should have been paid and reimbursed in a very considerable amount for his large advances and enormous services but the record fails to support the contentions in the trustee's brief that he was overpaid. There is no allegation anywhere that any of the payments constituted preferential payments other than the above statement in the brief that sums totalling $93,700 were paid to him "within four months" of the petition in involuntary bankruptcy.

McGuire apparently had a great deal of confidence in Repasky, and Repasky in McGuire, as the arrangements for the various operations of large magnitude were concluded on mere shakes of the hand. There was no written agreement in respect to the details of the matters other than two overall agreements dated January 5, 1977 and June 1, 1978 outlining the scope of the activities and defining in general terms the basis on which Repasky was to be compensated, and there is no testimony that the money advanced for his interest in the Penn Well Logging Company in February, 1978 of some $28,000 some six months before the filing of the bankruptcy petition was not fully earned, or that the payment on account for the drilling rig as to which he assumed liability on secured obligations in the amount of $326,000 of the $334,000 purchase price was not acquired as much for

the benefit of the Webb Oil Company and its customers for whom he was performing tremendous current services as for himself.

Of the $93,700 he received between April 24, 1978 and June 26, 1978, $26,200 was on account of services and expenses in current operations, $7,500 was loaned for the downpayment on the above described rig transaction, and $60,000 was advanced to McGuire by one Richard Wells for whom Webb Oil Company had drilled wells in the past and was in the process of drilling additional wells, and Repasky testified he used this money on McGuire's instructions to pay bills for supplies purchased from the Bradford Pipe and Supply Company and others in connection with operations the testimony shows were then in process for said Richard Wells and the Glade Oil Company as well as for McGuire and the Webb Oil Company.

It is obvious that the trustees have failed to meet the burden of proof cast upon them in respect to the issue of preferential payments to Mr. Repasky for antecedent debts within four months of bankruptcy when the debtor was insolvent. There is no proof of the existence of such antecedent debts, that the defendant had knowledge of insolvency, or that such insolvency in fact existed. There is no showing or allegation that he was overpaid or that payments were unsupported by a present consideration or were avoidable as fraudulent transfers for less than fair value within a year of the filing. Preferential transfers of money and property in consideration of antecedent debts within four months of bankruptcy filing can be set aside in cases governed by the Bankruptcy Act of 1898 as amended only when the debtor is insolvent to the knowledge of the payee and the trustees in bankruptcy have the burden of alleging and proving the existence of such facts and in establishing the essential elements of fraudulent transfers in cases brought under the provisions of said Act: 3 (Part 2) Collier on Bankruptcy (14th Ed.) ¶ 60.02 et seq. supra. Further, payments of money advanced by a third party such as Richard Wells (supra), do not deplete the debtor's estate and hence do not support an action based on preferential or fraudulent transfers or payments:

*Creditors of DeAngio v. DeAngio*, 554 F.2d 863 (8th Cir. 1977). Even in cases instituted after the effective date of the Code (October 1, 1979) in which insolvency is presumed within 90 days of bankruptcy under *11 U.S.C. § 547(f)*, the trustee must allege and prove insolvency and the other necessary elements: 4 Collier on Bankruptcy (15th Ed.) ¶ 547.55. That cases instituted prior to the effective date of the Bankruptcy Reform Act of 1978 are governed by the Act of 1898 as provided in 11 U.S.C. § 403(a).

It is Ordered for the above reasons that the within actions of the trustees against Frank J. Repasky for money and assets of the bankrupt allegedly in his possession, be, and the same hereby are, dismissed.